The next case for argument this morning, the next case is 2011-1597 OCEAN DUKE CORPORATION v. United States v. United States Can I ask you just a couple of quick factual questions? Yes, Your Honor. Are you claiming, is there still EBRs related to the 2005 entry? Yes, Your Honor. That's the problem. So here's my question. Where are these frozen shrimps sitting that have been here since 2005, and how do I make sure I don't buy them at the end of the year? Your Honor. Because I'm flabbergasted why these EBRs are still in place from 2005 shrimp. Isn't that a first-in-first-out policy for shrimp sales? Why are you bringing them in in 2009 if the 2005 stuff is still sitting around somewhere? Your Honor, we've eaten the shrimp, we've enjoyed the shrimp. The shrimp comes into the country, it gets introduced into commerce. What remains, though, is a bond with customs pending the liquidation of the entry. Why haven't those entries been liquidated if the shrimp are long-standing? Your Honor, they're subject to an anti-dumping duty order. What happens when an anti-dumping duty order is in place is at a time of entry, you have to post a bond, and this time an EBR, which we believe has to be fairly clear, and the bond stays in place until the entry is liquidated. The entry remains unliquidated because for the entry to be liquidated, the Commerce Department has to conduct an annual review of the order, which could take a year and a half, and that goes to court, which could take years and years. So these EBRs remain in place for this ultimate liquidation. For a dumping order, every year there's an annual review of the order. Why didn't you bring an APA claim for not timely processing and liquidation of your goods? Because that, to me, would be, you'd have solid ground for that, right? Because then you couldn't be kicked out for timely. Your Honor, the statutory scheme of anti-dumping is unique. The way the statutory scheme runs with anti-dumping, the entry comes in, the Department of Commerce reviews all those entries in a year. The annual review of the Department of Commerce takes a year and a half, and then you can go to court. During that whole period of time, the liquidation of the entries is enjoined, so that the importer doesn't have a final determination of duty due until the judicial process is complete and the entries are liquidated. And it's still ongoing from 2005? Your Honor, it's still ongoing from 2014. Yes, in this case from 2005. And when do you anticipate it to be completed? We hope it will be completed within the next couple of years. But they're still out there. Their annual review is ongoing. I'm glad to know the shrimp aren't sitting somewhere in a secure locker. The shrimp are in my stomach, Your Honor. I'm going to eat my stomach if you like shrimp. Go ahead. Am I understanding that you are essentially arguing that this provision that gives commerce the right with notice to limit the applicability of a judicial decision gives rise to a private right of action? Absolutely, Your Honor. There's a right of action for, let's say, 19 U.S. states, 1625 days, where the statute says, and I'll quote the statute, Here we have a case. So you're saying that if they don't do that, that it creates a private right of action in someone else to sue for failure to take that action? What we're saying is the Court of International Trade has issued a final decision saying the EBR program is contrary to law for all name claims in that case. So there's a final decision with the Court of International Trade saying EBR is contrary to law. We have the identical facts with all those name claims in that case. And we're saying once that decision was final, the customs service should have applied the final decision to our open defense. Is that an APA claim that you've alleged in your complaint? I mean, you didn't even allege the other statutes you've just cited. No, we didn't. In our complaint, Your Honor, we allege that customs was required to follow the court decision. That was our claim. The statutory precedent that we're putting out there. Was your argument that the National Fisheries case gave rise to a separate cause of action under the APA? Yes. Because I have a hard time seeing that in the complaint. Well, in the complaint, Your Honor, we made the claim very clearly that customs is required to follow National Fisheries. That's what we made. That's the claim that we made in the complaint. That's the claim we made for customs. That's the claim we made in the complaint. Yeah, but that's a little, you know, in some specificity or some basis for this has to be, you know, I'm looking at the complaint. Now, by the way, the complaint is marked confidential. Is that necessarily? No, I think there's one number in the entire complaint that's confidential.  Okay. Okay. But in the complaint, in paragraph 65 of the complaint, we say, The court's determination that the EBRs imposed by CBP were unlawful and find it in the agency is a matter of law. And the agency may not continue to arbitrarily enforce EBRs against some importers and not others. So we're saying in the complaint that once you have a binding CIT decision, customs is required to apply that decision to other similarly situated importers. Customs can't ignore a judicial decision in a CIT. Well, interestingly, the National Fisheries case does, when you read it, very specifically and repeatedly refer to the specific facts of that case. It's not a situation where they knock down a statute as unconstitutional for all purposes. It is an as-applied analysis. So if you were to have a timely claim now, then presumably National Fisheries would have to be applied to you if, in fact, as you say, you're similarly situated. We're identically situated. The EBR program went into effect against all shrimp importers. We are identically situated to the plaintiffs in National Fisheries. We were not a plaintiff. We followed that. But the remedies the court took was the injunction to cause customs to remove the bond. And that analysis, much like Judge O'Malley is suggesting, was entirely based on irreparable harm. They cited particular testimony of individuals. It was not a ruling. And I don't think it can be fairly interpreted as a ruling. It's everyone who has an EBR or is subject to an EBR is now customs must impose relief of that obligation. It's very case specific. Two points to learn, or three points to learn. One, I think we're identically situated. Two, I think when we look at the National Fisheries decision, what Judge Stanchow said is the EBR is contrary to law. And three, we want our day in court on the issues to be raised. I understand the EBR is contrary to law. And if you had timely filed, customs would be bound to do that. But just because the EBR is contrary to law doesn't mean someone who never filed a suit and the statute of limitations was expired needs to go back. Your Honor, by taking that principle, what you're saying is if the Court of International Trade issues a decision, it's not that the Court of International Trade doesn't have to apply that decision to any other party. Sure they do. They can't ask you for any more EBR type arguments. Well, our EBRs are still there. That's the problem. The EBRs that we saw at the beginning of the argument, Your Honor, they're there. They're in place. They're going to be in place for years from now. These are open entries. And what we're saying is a court decision has to apply to all open entries of civilly situated parties. Well, there's lots of court decisions out there where the question of retroactivity, fairly or unfairly, gets analyzed and the determination is made that it's not retroactively applied. So you're saying that they have to go back and reopen every EBR that's out there. We're saying if any EBR that is still open, we're not saying retroactively. We're saying customs policy is to look at bonds. And if the bond is excessive, customs will change the bond. In our case, the Court of International Trade has said this bond, this 100% bond, is excessive. It's a matter of law. Customs has agreed prospectively because of the WTO decision that EBRs are contrary to law. Are you saying that there are regular reviews of the bonds in which a determination is regularly made under some regulation or policy? Why isn't that the challenge that you're making? Why isn't there some period of time where they're actually undertaking a review that then you say that review was inadequate? That's another one of our arguments. We're also saying we ask for reconsideration of the EBR based on the decision. That's different than what you just said. You're saying that customs has a policy of always regularly going back in and checking for them. The importer has the absolute right to go to customs and ask customs to renew the bonds of marriage based on some type of changed circumstances, based on a change in the law. So the importer has the right to ask customs to make a new determination on an open bond. That's what we did. We did this year in, year out. We're saying the bond is too much. Finally, when the national fisheries decision became final, we said, look, we have a final decision by the court. Customs has to follow that decision. You know, Mr. Marshak, I would have thought your answer to Judge O'Malley and Judge Moore is something you started to say a few minutes ago and then stopped, which is that it may be correct that on the merits, you get blown up on what it is you're alleging. In other words, the merits of whether or not national fisheries should be applicable to you or not applicable to you. But what you're here arguing today before this court is that there's not a statute of limitations bar, and those merits determinations have to be entertained. Am I wrong about that? Absolutely, Your Honor, and that's the next point I was going to make. I think that all that we're asking of you is to allow the court of international trade or the post-court of international trade, the court of international trade has to hear our argument. At the very least, we have an argument that the court is required to listen to what we say. And the difficulty I'm having with that is that the complaint is so thin on really teeing up that argument. They allege it as a separate cause of action. I mean, part of your complaint clearly is going towards something that is barred, in my view, by the statute of limitations. But part of the complaint that paragraph 65 was saying is apply national fisheries to us. And we want the court of international trade to consider that. Whether our complaint is perfect, whether we've decided to write judicial precedent, we've decided to write statute. Well, it was so imperfect that the court of international trade never addressed this argument, right? Yes, Your Honor. And that's literally because she didn't appreciate or understand what you're telling us today. Your Honor, the argument we made to the court of international trade, I call it the chutzpah argument. We basically just told the court of international trade, hey, customs is required to follow judicial decision. And we just said, how can they not follow judicial decision? What we should have done and what we're doing here, we're saying that there's legislation out there, 1625. Yeah, but aren't you compelled to make that argument, those arguments, in the first instance to the CIT? Here we have the case that will be cited to you, Your Honor. You asked me for a poem, and I think it's on all four of the cases. Did you cite that to the CIT? No, and that's the problem. We're citing it here. Yeah, well, that's the problem. It's not helpful for your case to acknowledge that there's a problem. The question is why we should overlook the fact that you cite these arguments below. Because what Raphone says, Your Honor, and I'll quote from the text, we do not think it appropriate to ignore relevant legal authority simply because it was not considered in the court below. And then it says – Yeah, but you haven't responded to my question yet, which is, how is it that you think you can make these arguments to us when you haven't brought them to the CIT? Because what we're doing is we're offering new legal authority for the position that we advocated below. Below we said that the customs is required to follow national officials. We said that in the complaint, we said that in the breach, and here we're putting some knee on it. And the Raphone case says, and it was the same thing, there they were saying the case should be thrown out because the plaintiff did not bring the statute to the district court's attention. That was our problem. We didn't bring the statute to the district court's attention. And what was claimed was, we offer a new legal authority position that we repeatedly advance, and that's what we're doing. We're putting the knee on our claim. We're offering the legal authority. The Court of Appeals to the Federal Circuit, in many cases, will soon as Sunday find the legal authority. The court here, sitting here, doesn't make a decision based on incorrect law. There's law out there, 1625, 5784, 481, the Baltex case, which we think is right on point, again, which we didn't cite, but what this court does is say, hey, gives us a chance to make those claims before the Court of the Argument. I think we have your argument. We want to hear it to your rebuttal time. Thank you, Your Honor. Thank you. May it please the Court, the trial court carefully reviewed the complaint and the record to conclude that the true nature of Ocean Duke's action was a challenge to its bond determinations, which were all made between Well, I'm understanding that, but I really am concerned about the discussion we were having with your friend on the other side, and that is, if we were to construe Claim 55 of the complaint to be a separate, distinct APA cause of action for not following national fisheries, notwithstanding how bogus that may be on the merits, why isn't that at least a timely claim if it's predicated on the national fisheries decision? Well, first of all, Ocean Duke would have been required to raise that issue explicitly in its opposition to our motion to dismiss before the trial court. Well, I kind of looked at that, and I mean, we can all ultimately make a decision about that, but it seems to me that they kind of did raise it, perhaps arguably did raise it. You're suggesting that, I mean, they said at page 12, after the national fisheries decision was final and conclusive, its decision to continue the application of unlawful policy, blah, blah, blah, gave rise to a new legal issue, that is, whether to apply the final court decision to all adversely affected importers. Why isn't that enough? Well, because the trial court disposed of that issue when it was talking about a continuing claim, and if you look at, say, the Brown Park decision, where... So is your answer to my question that they really, in fact, didn't articulate an APA cause of action based on national fisheries, that that wasn't clearly articulated, that it was just part of their continuing violation argument? I saw it as more a part of their continuing violation argument, and that somehow the national fisheries decision, the final judgment, somehow resulted in a change in law, and if you look at Halpern v. Principi and other cases of this court that are governing precedent, judicial decisions, all they do is state the law as it had always been, so there was no change in law that came about because of NFI. The law was always the same. The CIT slams Customs for applying these EBRs, applying these final requirements. The WTO completely finds it to be a violation of all of our obligations, and yet you still want to apply these? Why not just go back and clean them all up? Well, first of all, the government's not really continuing to apply them. What occurred here was in 2005 and then in the other years as well. Customs made a decision regarding what the risk posed to the revenue was by imports of shrimp subject to anti-dumping duties. And that decision was wrong. I mean, clearly, arbitrary, capricious, everything else. We respectfully disagree with the trial court's decision. Well, you didn't appear it. That's correct. Right, and you also got slammed by WTO, so now you've got an arbitrary, capricious decision, and you're continuing to hold their money when there's no valid basis for requiring that level of bond. So why not just go back and clean them all up? Or why not allow the motions for reconsideration once they come in and reduce the amount of the bond? Well, first of all, that decision is committed to agency discretion. There's no separate procedure that gives rise to an APA final determination that's mandatory for Customs to go and entertain these sorts of requests for reconsideration. But there is a statutory provision that says that if Customs is going to limit the effect of a court decision, and presumably here what you're trying to do is limit it to only prospective effect, that you have to go through notice procedures, and you didn't do that, correct? But we also, as we noted in our brief, that provision, Section 1625, and the regulations, Section 177.10, and the other regulations, are all really limited to classification and appraisement of merchandise by their own terms. They're not provisions that govern APA-like decisions, such as these bonding decisions. The difficulty I'm having, as I expressed to your colleague, is that you may be right on the merits. You may be absolutely right on the merits. The question is why, if that's the nature of the challenge here, that the government acted arbitrarily by not applying the National Fisheries Decision in whatever it was, 2010, to all parties, was arbitrary. You may be right on the merits, but why is that foreclosed by the two-year statute of limitations period? Oh, because that would be exactly the case in Mitsubishi. Here we have a permissive, what the Mitsubishi Court would call a permissive administrative determination, where anyone is allowed to go ask the government to give them something at any time. That's the right petition. That's all fine and good, but every time you write a letter to the government, that does not result in a final agency action that's reviewable under the APA. The real issue with Mitsubishi had to do with whether or not there's any different type of damage than the damage that was incurred based on the first act or the first injury. Correct. How do you respond to the argument that we didn't talk about yet, but the argument that's made in the brief, that there is a new competitive disadvantage that has arisen by virtue of your applying National Fisheries to the parties to that case? Well, that would be the situation for any party that sweeps on its rights, while a similarly or identically situated party goes and exercises their rights and gets relief. That's the final result if you look at the Supreme Court decision in Akron, where the court concluded that there was no compelling basis for reopening a final judgment. Just because one party in a companion case appealed, Ackerman didn't, and the party in the companion case went and got a favorable result. Well, that's exactly what happened here. In your brief, I think that you don't list any under your statement of related cases. I think you didn't list any of them. Is this issue something that other people have? Are there other cases pending or below that implicate the same sort of issue as to whether or not the National Fisheries case should be applied to other parties? There are no cases at the Court of International Trade of which we're aware, and importers are— Are there motions for reconsiderations pending or requests to protest or something like that about EBRs? I'm unaware of any formal protest before customs, and I think that wouldn't be the correct place for someone to raise an issue. There might be informal communications between customs and importers, and that happens all the time. But those sorts of communications, just like the— How many people are out there that are similarly situated? Well, we'd have to be—we'd have to know exactly who has unliquidated entries that are still out there, whose surety—I mean, who has a reason to complain, because some sureties might have released security that they required to be posted. Some might have never required the posting of security. But there's a large number of shrimp importers out there. I think the 27 NFI plans is only a small sliver of the importing public, and it would be safe to say there's a pretty large number of importers out there who might be affected. But they're not on a separate issue, which is cases pending that are still—that were timely filed, but that are like—present the same issue as national fisheries. Are there other cases out there? Oh, no, there are no cases out there. National fisheries plans were the only— There was another group that brought a complaint that they were exporters, and their case was dismissed for one outstanding. But the national fisheries— Now, one of the things you mentioned in response to one of Judge O'Malley's questions earlier was that discretion would reside within the agency, you know, after a case like national fisheries, to decide whether to go back and, you know, redo these bonds for all affected parties. Is that what you—was that your answer to her? Did I understand that right? Such a determination would be committed to agency discretion under the APA, not a discretionary decision that's reviewed for— Abuse of discretion. For abuse of discretion, it would be a decision that's reviewed under an ultraviolet standard. For these reasons, we respectfully request that the Court affirm that there are no further questions. Thank you. General Arshak, you have a minute or so remaining. Thank you, Your Honor. As far as the last comment, whether it's discretion under the agency to apply NFI, we believe it's an abuse of discretion standard, and that's what we want the Court to look at. If you look at the Volpex case where Judge Barzila said that the customs failure to follow a midway judicial decision is an abuse of discretion, and we just want the Court to consider that issue. We don't think customs has the right to ignore judicial decisions, and it has to be self-reviewed. We believe it's an abuse of discretion standard. We have Volpex for precedent. We have statutory authority 1625d that should have filed. We have judgment decision 78481. And as you said, Your Honor, it's not for this Court to make a decision whether we're right or wrong, but we want our day in court. And we believe, you know, hopefully at the end of the day, when Judge Barzila said about the policy in the EBR, where he just basically said it's a wrong policy, that will be victorious at the end. As far as other importers being involved, Your Honor, we have a lot of money at stake, and it's very important, and this money has been tied up already for seven years, and it looks like it's going to be tied up for more years, and we're at a major competitive disadvantage, and basically it's not fair. And that's really not the law, whether it's fair or not. But we have the law, and we have the legislative authority, and we have the judgment decision, and we have judicial precedent, and with all that, we want our day in court. Thank you. Can I just ask one factual question, another one? Yeah. Which is, I'm curious, while you fight over what the amount of liquidated damages should, or liquidated entries should be, whatever, the thing you're still fighting over is the reason these things are still on the books. For years. So if, for example, if, well, I'm just picking numbers out of the blue, if you had a $10 million bond, and you and Customs were back and forth, and they were saying you owed $1 million, and you were saying you owed $500,000, would they give you the other nine back since it's not a dispute? Here's the problem with this bond, Your Honor. The bond stays in place until every single penny is accounted for. So we have a bond amount. Even if, like, both Customs and you all agreed that, you know, the bond was way beyond what you had agreed on? The bond is way beyond, but Customs will not change the bond, even though there's only a dollar at stake. I understand. That bond amount stays until the end of the day, or until we get this case reversed. I understand. Thank you, Your Honor. Thank you. We thank both counsel, the case is submitted.